```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
                       HOUSTON DIVISION

ERNESTO HINOJOSA,              §
TDCJ-CID # 586249,             §
                               §
          Plaintiff,           §
                               §
v.                             §    CIVIL ACTION NO. H-05-1886
                               §
GARY JOHNSON, et al.,          §
                               §
          Defendants.          §
```

## MEMORANDUM OPINION AND ORDER

Ernesto Hinojosa, an inmate of the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), has filed a complaint under 42 U.S.C. § 1983 alleging that TDCJ-CID officials have violated his constitutional rights by failing to protect him from an assault by another inmate at the TDCJ-CID Wynne Unit located near Huntsville, Texas. The defendants have moved for summary judgment. After reviewing the pleadings and the records, the court has determined that the motion should be **GRANTED** and that this action should be **DISMISSED**.

### I. Plaintiff's Claims and Allegations

Hinojosa asserts that another inmate named Joseph Brown, without any provocation, assaulted him on September 24, 2003. He alleges that Brown struck him from behind with a toilet brush. When the brush shattered after several blows, Brown began to stab Hinojosa with the broken end. Hinojosa was taken by surprise and repeatedly asked Brown, "Why are you doing this?" Another inmate

named Sparks intervened and helped Hinojosa extricate himself.  By this time, Hinojosa was bleeding from a head wound.  In addition, he had several contusions on his back as a result of Brown's attempts to stab him with the broken toilet brush.  Hinojosa was taken to the prison infirmary where he received stitches for his head wound.  Hinojosa states that he suffered pain as result of the injury and that he has continued to experience headaches and dizziness.

Hinojosa contends that the defendants are liable for his injuries because they were deliberately indifferent to his need for protection from such an assault.  In support of this argument, he contends that Wynne Unit was inherently dangerous because it was understaffed and that the officers routinely neglect their duties to monitor their areas and the inmates in their charge.  Hinojosa further complains that the unit is old, crowded, and poorly designed to prevent inmate assaults.  In addition, he contends that the defendants do not segregate inmates with mental problems and that janitorial tools are readily available to inmates to use as weapons.

Hinojosa claims that Brown was a delusional paranoid-schizophrenic with a history of assaults both in and out of prison.  He further alleges that defendants, Warden Joe Fernald, Chief Classification Officer Kathy Laughlin, Captain James Simpson, Captain George Webster, and Officer Angela Massie, had actual

knowledge of the unit's inherent risks and the specific dangers caused by Brown's presence.  See Docket Entry No. 30, at 8-9.  He specifically alleges that ten days before the assault an inmate named Richard Lopez (TDCJ-CID No. 644519) warned Captain Simpson that Brown's erratic behavior was intensifying and that Brown presented a danger to himself and others.  Id. at 9.  Moreover, another inmate had committed an assault with a toilet brush during the early part of 2002.  Id.  Hinojosa argues that, with such knowledge, the defendants should have made efforts to isolate Brown and impose a tool control policy in order to prevent any further assaults.  However, no such action was taken by the defendants who, according to Hinojosa, deliberately ignored the danger and allowed the assault to occur.  Hinojosa further claims that TDCJ-CID Directors Gary Johnson and Doug Dretke had actual knowledge of the substantial risk created by the under-staffing but did nothing to rectify the problem.  Hinojosa seeks a declaratory judgment and compensatory damages for the harm he has suffered.

## II. Summary Judgment Standards

The defendants have filed a Motion for Summary Judgment. Docket Entry No. 38.  In deciding a motion for summary judgment, the Court must determine whether the pleadings and records indicate if there is a genuine issue regarding any material fact and whether the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552

3

(1986); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue. Rushing v. Kansas City Southern Ry. Co., 185 F.3d 496, 504 (5th Cir. 1999). To meet this burden, the movant must present evidence that shows that the nonmovant cannot carry its burden of proof at trial. Smith v. Brenoettsy, 158 F.3d 908, 911 (5th Cir. 1998). Once the movant has met this burden, the nonmovant must present specific facts showing that there is a genuine issue for trial. Id.

The court construes the evidence in favor of the nonmoving party and cannot weigh the evidence, assess its probative value, or resolve any factual disputes. Williams v. Time Warner Operation, Inc., 98 F.3d 179, 181 (5th Cir. 1996). However, the nonmovant cannot rely on "conclusory allegations" or "unsubstantiated assertions" to establish that there is a triable issue. Wallace v. Texas Tech University, 80 F.3d 1042, 1047 (5th Cir. 1996). Nor is the nonmovant's burden satisfied by casting "some metaphysical doubt as to material facts" or where "only a scintilla of evidence" has been brought forth. Fiesel v. Cherry, 294 F.3d 664, 667 (5th Cir. 2002); Spectators' Communication Network Inc. v. Colonial Country Club, 253 F.3d 215, 219 (5th Cir. 2001). Factual controversies will be decided in the nonmovant's favor only when both sides have presented evidence showing that there is an actual

controversy.  <u>Burns v. Harris County Bail Bond Bd.</u>, 139 F.3d 513, 518 (5th Cir. 1998), <u>citing</u> <u>Little</u>, 37 F.3d. at 1075.  In the absence of any proof, the court will not assume that the nonmovant could or would prove the necessary facts.  <u>Id</u>.

### III. **The Defendants' Arguments and Evidence**

The defendants contend that Hinojosa has failed to demonstrate deliberate indifference because he failed that any of the defendants were aware that he was in danger before the assault occurred on September 24, 2003.  They assert that Hinojosa has not shown or claimed that he personally notified anyone that he perceived he was in danger.  He merely claims that the defendants should have known about the danger.  According to the defendants (Docket Entry No. 38, at 8), TDCJ-CID policy would have required an investigation by the Unit Classification Committee if Hinojosa had submitted a claim that Brown endangered his safety.  They assert that Hinojosa gave no such notification.

The defendants further assert that Hinojosa does not claim that any of them were personally involved in the incident in question.  They contend that Hinojosa's complaint about the alleged under-staffing does not causally link Johnson and Dretke to the assault.  They contend that there is no indication that the Wynne Unit was actually under-staffed or, if it was under-staffed, that they could have done anything about it.  They also argue that there

5

is no evidence that the alleged under-staffing was the cause of the assault.

The defendants argue that Hinojosa failed to show that the defendants were aware that the availability of cleaning tools posed a risk to his safety. They also contend that there is no showing that they were aware of any danger due to past incidents.

In support of the defendants' arguments that they were not deliberately indifferent to Hinojosa's safety, they present a copy of the incident record (Docket Entry No. 38, Exhibit A) concerning the assault which occurred on September 24, 2003. Included is an Administrative Incident Review by Warden Fernald (Exhibit A, at 5-7), Administrative Review Comments by the Regional Director (Id., at 8), notes from TDCJ-CID officials (Id., at 10-12), the Incident Report (Id., at 14-15), the Offense Report (Id., at 16), the Disciplinary Report (Id., at 17), Hinojosa's TDCJ-CID record (Id., at 18-22), Brown's TDCJ-CID record (Id., at 23-25), Captain Webster's Offender Assault Report (Id., at 26), Officer Massie's Use of Force Report (Id., at 27), a Use of Force Report from Officer Cruz (Id., at 28), Brown's statement about the assault (Id., at 29), Hinojosa's statement regarding the assault (Id., at 30-31), Spark's statement regarding the assault (Id., at 32), a statement from other inmates who witnessed the assault and who lived in the area where the assault occurred (Id., at 33-43), and a statement regarding the penalties imposed on Brown for committing

the assault (Id., at 43-44). The defendants have also submitted a witness statement from Inmate Richard Lopez in which he states that he previously sent an I-60 memorandum to Captain Simpson mentioning Brown's erratic behavior (Docket Entry No. 38, Exhibit B) and Simpson's statement (Docket Entry No. 38, Exhibit C) in which he denies any knowledge of receiving a complaint from Lopez about Brown.

The records show that Brown's attack was unprovoked and unanticipated. Although Hinojosa's statement (Exhibit A, at 30-31) indicates that he was aware of Brown's disturbing behavior, he avoided contact with Brown and did nothing to goad or arouse him. Brown's statement (Exhibit A, at 29) exhibits a sense of paranoia that came to a head with the assault on September 24, 2003. It is clear that Hinojosa was oblivious to the fact that Brown's mounting wrath was focused on him and that Hinojosa had no real reason to believe that he was a potential victim.

It is not certain that Lopez's purported statement was delivered to Captain Simpson. See Exhibit C. Even if the message was delivered, Simpson was a disciplinary hearing officer who was not working in the living area where the assault occurred. Id. Moreover, Lopez's statement only reflects that he was worried in general about Brown's behavior and the possibility that someone, including Brown, might be hurt. Exhibit B. There is no evidence

that Hinojosa was a target or that Brown had made any specific threat.

## IV. Analysis

Prisoners have a constitutional right to be protected from violence at the hands of other prisoners. Farmer v. Brennan, 114 S.Ct. 1970, 1976 (1994). A prisoner's failure to protect claim is based on the Eighth Amendment's prohibition against cruel and unusual punishment. Horton v. Cockrell, 70 F.3d 397, 400-01 (5th Cir. 1995), citing Farmer, at 1977. To prevail on such a claim a prisoner must show that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection. Jones v. Greninger, 188 F.3d 322, 326 (5th Cir. 1999). An official acts with deliberate indifference only if he is aware of facts from which the inference could be drawn that there exists a substantial risk of serious harm to an inmate, and the official actually draws that inference. Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995), citing Farmer, 114 S.Ct. at 1979. Mere negligence does not constitute deliberate indifference. See McClendon v. City of Columbia, 305 F.3d 314 325-26 (5th Cir. 2002). A prisoner must show that the prison officials displayed a reckless disregard for his safety. Farmer, at 1980.

Hinojosa's broad complaint that Wynne had a history of assaults does not support a claim that the prison officials were

8

deliberately indifferent to his safety.  It is well known that prisons are populated by miscreants who create a harsh and often dangerous environment.  See Wilson v. Seiter, 111 S.Ct. 2321, 2324 (1991).  Prison officials are saddled with the vexing problem of maintaining a secure institution without entirely denying the inmates' ability to engage in some rudimentary activities. See e.g. Wilkerson v. Maggio, 703 F.2d 909 (5th Cir. 1983).  Therefore, prison officials have been accorded wide discretion in determining how to handle prisoners.  Rhodes v. Chapman, 101 S.Ct. 2392, 2400 n.14 (1981).  There can be no finding of constitutional violation unless it is shown that the defendants were deliberately indifferent to Hinojosa's safety in responding to a know threat presented by Brown.  Neals, 59 F.3d at 533.

The records in this action indicate that Brown was acting strangely before the assault and that other prisoners as well as prison officials were aware that Brown may have been delusional. However, any failure of the officials to recognize that Brown may have presented a threat to himself or others does not constitute deliberate indifference to the need for a safe environment within the prison.  See Sibley v. Lemaire, 184 F.3d 481, 489 (5th Cir. 1999) (guards were not deliberately indifferent in failing to prevent an inmate from plucking his eyes out despite his prior bizarre behavior and a doctor's determination that the inmate needed to be transferred to a psychiatric hospital).  The

9

defendants cannot be held liable for what they should have known; it must be proven that they had actual knowledge that Brown intended to attack Hinojosa and that they ignored the danger to Hinojosa's safety. Farmer, 114 S.Ct. at 1979.

Brown's prison record (Exhibit A, at 22-24) reveals a history of aberrant and violent behavior. However, Hinojosa's record (Exhibit A, at 20-22) also includes a long list of dangerous and socially unacceptable activities. That is why both of these men are in prison. Hinojosa states that the attack was a complete surprise, and he does not allege or point to any evidence that anyone was aware of Brown's plan to assault him. There is no record of Hinojosa complaining to officials about any difficulties with Brown. Without such notification, the officials could not be aware of the danger to Hinojosa's safety. See e.g. Nelson v. Overberg, 999 F.2d 162 (6th Cir. 1993). Lopez's general complaint about Brown's anti-social conduct (Exhibit C)[1] was too vague to adequately inform the officials that they had a duty under the Constitution to isolate Brown from other inmates in including Hinojosa. See Smith v. Brenoettsy, 158 F.3d 908, 912 (5th Cir. 1998).

---

[1] "[A]bout a week and half [before the assault] I sent Captain Sims [sic] an I-60 telling him we have a dangerous situation up here on 6 dorm. I told him inmate Brown was exhibiting irratic [sic] behavior. I mentioned to the Captain that inmate Brown was alienating everyone up [sic] (including Blacks) and it was just a matter of time before something like this would occur. I told him inmate Brown was dangerous and that he would hurt someone or someone was going to hurt him."

The evidence shows that the defendants took action after the assault when it was clear that Brown presented a safety threat. They disciplined Brown and removed him from the area away from Hinojosa and the other inmates. Exhibit A, at 5-17.  The Eighth Amendment mandates "reasonable" safety, not "absolute" safety and prison officials are not liable when they make good faith errors in assessing a potential danger.  See Newton v. Black, 133 F.3d 301, 307 (5th Cir. 1998).  Although in hindsight the preferred course of action would have been to isolate Brown when he started exhibiting his anti-social behavior, this court cannot second-guess the defendants' decisions; their actions did not violate Hinojosa's constitutional rights.  Id.

The defendants have demonstrated that there are no genuine issues of material fact regarding the claims and they are entitled to summary judgment as a matter of law.

### V. Conclusion and Order

The defendants' motion for summary judgment (Docket Entry No. 38) is **GRANTED**.

**SIGNED** at Houston, Texas, on this 20th of October, 2006.

———————————————————
SIM LAKE
UNITED STATES DISTRICT JUDGE

11